THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEPHEN L. KAYSER and GLORIA YOUNG, individually and as husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>WHATCOM COUNTY, a political subdivision of the State of Washington; DAVID S. McEACHRAN, Prosecuting Attorney for Whatcom County in his official capacity,<br><br>Defendants. | CASE NO. C18-1492-JCC<br><br>ORDER |

This matter comes before the Court on Defendants' motion to dismiss Plaintiffs' amended complaint (Dkt. No. 17). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

**I. BACKGROUND**

The facts of this case have been detailed in a previous order and the Court will not repeat them here. (*See* Dkt. No. 14.) Plaintiffs allege that Defendants denied Plaintiff Stephen Kayser ("Kayser") his rights to due process and a fair trial when they failed to disclose exculpatory evidence in violation *of Brady v. Maryland*, 373 U.S. 83 (1963). (Dkt. No. 15.) Plaintiffs also

claim that Defendant Whatcom County is liable for the violations of Kayser's constitutional rights under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). (*Id.* at 13–16.)[1]

Defendants removed the case to this Court, and moved to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 9.) The Court dismissed Plaintiffs' complaint without prejudice and with leave to amend. (Dkt. No. 14.) Plaintiffs filed an amended complaint (Dkt. No. 15), which Defendants now move to dismiss. (Dkt. No. 17.)

## II. DISCUSSION

### A. Motion to Dismiss Legal Standard

The Court may dismiss a complaint that "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678. A plaintiff is obligated to provide grounds for his or her entitlement to relief that amount to more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

### B. Violation of *Brady v. Maryland*

A violation of *Brady* deprives a person of his or her constitutional right to due process. *Brady*, 363 U.S. at 88. Thus, plaintiffs may sue governmental actors under § 1983 for *Brady* violations. *See id; United States v. Agurs*, 427 U.S. 97 (1976). In order to do so, a plaintiff must

---

[1] Plaintiffs originally brought suit against prosecutor Eric T. Richey and Defendant McEachran in their individual capacities. (Dkt. No. 1-1.) Plaintiffs' amended complaint removed Richey as a party and names Defendant McEachran only in his official capacity.

prove three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

Plaintiffs' complaint asserts that the *Brady* evidence was favorable to Kayser because it would have impeached the central prosecution witness, it was withheld by Defendants, and the alleged withholding prejudiced Kayser in the state criminal proceedings. (*Id.* at 5–9.) Suppressed or withheld evidence "that would impeach a central prosecution witness is indisputably favorable to the accused." *United States v. Price*, 566 F.3d 900, 907 (9th Cir. 2009). Plaintiffs allege that nearly all the evidence against Kayser in his underlying criminal case was the testimony of Mark Adams, a process server who claimed Kayser assaulted him. (Dkt. No. 15 at 5, 8.) As such, evidence that would impeach Adams's credibility or reveal past complaints against him that required residents to defend themselves would be indisputably favorable to Kayser. (*Id.* at 9.) Indeed, the Prosecutor dismissed the charges against Kayser after his defense counsel was granted permission to admit examples of Adams's past conduct and evidence that the State declined to charge at least one person whose property Adams had entered. (*Id.* at 7–8.)

The "terms 'suppression,' 'withholding,' and 'failure to disclose' have the same meaning for *Brady* purposes." *Benn v. Lambert*, 283 F.3d 1040, 1053 (9th Cir. 2002). Plaintiffs contend that the Prosecutor did not provide the *Brady* evidence to Kayser's defense attorneys, even when they specifically requested it. (Dkt. No. 15 at 7–8.) As such, Plaintiffs claim that the undisclosed evidence of Adams's similar "bad conduct" was "highly relevant" to the state court's determination of whether Kayser acted in self-defense, (*id.* at 9), and that Defendants failed to disclose evidence that their "sole witness had created fear and apprehension in others under similar circumstances justifying self-defense." (*Id*. at 13.)

Whether prejudice resulted from the suppression of *Brady* evidence depends on whether it is material to the guilt or innocence of the defendant. *Kyles v. Whitley*, 514 U.S. 419, 434

(1995) (holding materiality is gauged by whether *with* the evidence, a "reasonable probability" exists that a different outcome would have ensued). Kayser argued in his state criminal proceeding that his alleged assault of Adams was caused by Adams's own frightening and bizarre conduct. (*See* Dkt. No. 15 at 4–8.) Plaintiffs further assert that the Whatcom County Prosecutor or Sheriff's Office had records of similar incidents where Adams caused those to whom he was serving process to act in self-defense or to call law enforcement. (*Id*.) Therefore, Plaintiffs have pled factual allegations that raise their claim for violation of *Brady* above the speculative level, and Defendant's motion to dismiss is DENIED as to this ground.

Plaintiffs seek damages from Defendant Whatcom County ("the County") for the alleged *Brady* violation under *Monell*. (*See* Dkt. No. 15.) While a prosecutor is individually protected by absolute immunity for decisions made within the exercise of prosecutorial functions, *Broam v. Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003), a constitutional violation may be properly attributed to a governmental entity when an official, such as a prosecutor, acts pursuant to a municipal policy or a widespread practice. *Monell*, 436 U.S. at 694. Whether Plaintiffs have sufficiently pled *Monell* liability claims against the County is discussed below.

### C. *Monell* Liability of the County

A municipal entity may be held liable for its agents' constitutional violations under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Id*. Plaintiffs may seek injunctive relief and compensatory damages for constitutional harms, but municipalities are immune from punitive damages under § 1983. *City of Newport v. Fact Concerts, Inc*., 453 U.S. 247, 254 (1981).

Courts have recognized three additional ways a plaintiff may demonstrate a policy resulting in *Monell* liability: when the municipality fails to or inadequately trains its employees, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); when a policymaking official ratifies the unconstitutional conduct of a subordinate, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127

(1988); and when a municipal official with final policymaking authority takes action or makes a decision that results in the deprivation of constitutional rights. *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1979).

Plaintiffs allege that the County is liable for the alleged *Brady* violations under *Monell* because: (1) the County had an official policy that erroneously defined *Brady* evidence; (2) the Prosecutor demonstrated a custom or practice of the County by withholding *Brady* evidence on more than one occasion in Kayser's case; (3) the County failed to train its employees regarding disclosure of *Brady* evidence; and (4) official policymakers for the County acted to deprive Kayser of his constitutional rights by withholding *Brady* evidence. (Dkt. No. 15 at 6, 9–10, 13–15.) The Court examines each theory in turn.

    1. <u>Official Policy</u>

Courts have recognized that at the pleading stage, plaintiffs are unlikely to have access to official government policies. *See, e.g.*, *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826 (S.D. Tex. 2011). However, in order to survive a motion to dismiss, plaintiffs must plead "[f]actual allegations [that are] enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiffs' first complaint generally alleged the existence of an unconstitutional *Brady* policy, (Dkt. No. 1-1 at 12), which the Court dismissed as insufficient to establish a plausible claim. (Dkt. No. 14 at 6.) Plaintiffs' amended complaint alleges that the County maintains an official policy that erroneously defines *Brady* evidence as "only evidence for the possible impeachment of government employees" and that as a result of this policy, the Whatcom County Sheriff's Office and Prosecutor's Office failed to disclose the evidence of Adams's prior similar conduct to Kayser's counsel or "with each other." (Dkt. No. 15 at 9–10, 12.) Plaintiffs do not allege specific facts about the policy other than that its existence and that the County's definition of *Brady* evidence is incorrect. *See id.* In the absence of more specific factual allegations, Plaintiffs' claim of a right to relief from the County based on an official policy does not rise above speculative level. Therefore, Defendants' motion to dismiss is

GRANTED on this ground.

   2. Practice or Custom

An unconstitutional practice may result in municipal liability when the decisions and actions of municipal officials are "so permanent and well settled [that they] could constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691. In order to establish a practice or custom, plaintiffs must allege more than "isolated or sporadic incidents." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Plaintiffs must allege practices of such "sufficient duration, frequency and consistency," that the practice has "become a traditional method of carrying out policy." *Id.*

Plaintiffs assert that the County's unconstitutional practice is evidenced by the Prosecutor or Sheriffs' failure to disclose the *Brady* evidence on more than one occasion in Kayser's state court criminal proceedings. (Dkt. No. 15 at 6–7, 13.) But Plaintiffs have not provided factual allegations that the Prosecutor's and the Sheriff's Offices failed to disclose *Brady* evidence in other cases. Plaintiffs' complaint fails to allege more than an isolated or sporadic incident, as opposed to an established practice or custom. *Id.* Therefore, Plaintiffs have not plausibly alleged *Monell* liability and Defendant's motion to dismiss is GRANTED on this ground.

   3. Failure to Train

For *Monell* liability to reach a municipality on a failure to train claim, a plaintiff must demonstrate that the municipality was on notice of constitutional violations and made a "conscious or deliberate choice" not to act that "amounts to deliberate indifference to the rights of persons with whom the [county officials] come into contact." *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (internal citations omitted). Further, in order to demonstrate deliberate indifference, plaintiffs must ordinarily show "[a] pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). "Contemporaneous or subsequent conduct cannot establish a pattern of violations." *Id.* at 563 U.S. at 65.

A pattern of similar violations may not be necessary to demonstrate deliberate indifference when a single constitutional violation is so obviously the consequence of a municipality's failure to train. *Id.* at 63. However, "failure to train prosecutors in their *Brady* obligations does not fall within the narrow range" of cases that the Supreme Court had previously hypothesized may allow for "single-incident liability." *Id.* at 64 (explaining that a "licensed attorney making legal judgments, in his capacity as a prosecutor, about *Brady* material" does not present the same obvious constitutional danger posed by other cases, such as training police on the use of lethal force).

Much of Plaintiffs' amended complaint describes actions taken by the individual prosecutor in Kayser's case. (Dkt. No. 15 at 13.) But Plaintiffs' failure to train claim focuses on a failure to train the County's sheriffs on *Brady* evidence. (*Id.*) To the extent that Plaintiffs' failure to train theory is supported by the individual prosecutor's actions, it cannot proceed in the absence of a pattern of *Brady* violations by other prosecutors. *See Connick*, U.S. 563 at 64 (holding that a failure to train prosecutors in their *Brady* obligations was *not* one of the few circumstances where the need for training would be "obvious"). Plaintiffs allege that the individual prosecutor failed to disclose or produce *Brady* material when asked twice in Kayser's state criminal proceedings. (Dkt. No. 15 at 11.) However, contemporaneous or subsequent actions by a prosecutor may not be used to demonstrate a pattern to support a failure to train theory. *Connick*, 563 U.S. at 65.

Plaintiffs assert that Defendants "implemented or tolerated plainly inadequate . . . training, supervision, and/or discipline concerning the constitutional duty of police investigators to make timely disclosure [to the prosecutor and defense counsel] of *Brady* material." (Dkt. No. 15 at 13.) Plaintiffs further assert that the County's policymaking officials had notice of the need to provide *Brady* training based on Supreme Court, U.S. Court of Appeals, and Washington Court of Appeals case law and "the inherent obviousness of the need to train . . . law enforcement officers" in their *Brady* obligations. (*Id.* at 14–15.)

Plaintiffs' allegations are insufficient to establish a pattern of similar constitutional violations that would have put the County on notice of the need to train its sheriffs about disclosure requirements under *Brady*. Plaintiffs do not allege any facts showing a deliberate choice by the Sheriff, Prosecutor, or other County official to fail to implement adequate training of Whatcom County's Sheriffs on *Brady* requirements. Rather, Plaintiffs' complaint discusses the Sheriff's conduct regarding *Brady* evidence solely in the context of Kayser's criminal proceedings when Defendant McEachran allegedly said he had not been given the evidence by the Sheriff's Office. (Dkt. No. 15 at 8.) As with the individual prosecutor, even if an individual sheriff had withheld such evidence from the prosecutor more than once in Kayser's criminal proceedings, contemporaneous or subsequent acts do not satisfy the general requirement to show a pattern of violations that would have put the County on notice as required for a failure to train claim. *Connick*, 563 U.S. at 65.

The amended complaint fails to plausibly allege *Monell* liability on a failure to train theory because it does not allege facts showing the County was "on notice" of the need for further training or that there was an obvious need to train either prosecutors or sheriffs on *Brady*. Therefore, Defendant's motion to dismiss is GRANTED on this ground.

    4. <u>Acts of Official Policymaker</u>

While a county official's act or decision may be attributable to a county, "not every decision by municipal officers automatically subjects the municipality to § 1983 liability." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482–83 (1986). In addition to possessing discretion for certain decisions and functions, the official must "also be responsible for establishing final government policy" with respect to the official's specific action before the municipality may be subject to liability. *Id*. The district court's determination of whether an individual is a final policymaker for purposes of *Monell* is based on state law. *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989). The role of the individual should not be determined by title, but rather by considering whether he or she had final policymaking authority "in a particular

area, or on a particular issue." *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997).

Plaintiffs allege that Whatcom County's Prosecuting Attorney, Sheriff, and their authorized delegates are final policymakers because they have "final authority for training, instructing, supervising, and disciplining law enforcement and legal personnel" and that the Sheriff's Office bases its *Brady* policies on advice from the Whatcom County Prosecuting Attorney. (Dkt. No. 15 at 9, 15.) Plaintiffs have not cited a statutory ground in their complaint establishing that prosecutors are final policymakers in the context of providing advice to the Whatcom County Sheriff's Office. (*See generally* Dkt. No. 15.) Plaintiffs cite Revised Code of Washington § 36.27.020 in their response to Defendants' motion to dismiss. (*See* Dkt. No. 23.) However, Revised Code of Washington § 36.27.020 does not make reference to prosecutors possessing authority to make policy for a county office. *See* Wash. Rev. Code § 36.27.202(2) (stating prosecutors shall "be legal adviser to all county and precinct officers"). Thus, Plaintiffs' complaint does not plausibly establish that the Prosecutor acted with final policymaking authority when he allegedly advised the Sheriff's Office about *Brady* evidence. Therefore, Defendants' motion to dismiss is GRANTED on this ground.[2]

### D. Malicious Prosecution

Plaintiffs bring a common law claim of malicious prosecution against Defendant McEachran in his official capacity. (*See* Dkt. No. 15 at 1.) Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent," *Monell*, 436 U.S. at 690 n. 5. Conversely, personal capacity suits allege personal liability and seek damages from the individual who took actions under color of state law. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

A prosecutor acting within the scope of his or her duties in initiating or pursuing a

---

[2] Because Plaintiffs have failed to cite a statutory basis supporting their argument that the Prosecutor is a policymaker for the County, the Court declines to address Defendants' arguments that prosecutors are state officials instead of county officials.

criminal prosecution is absolutely immune from civil suits for malicious prosecution arising under common law or § 1983. *See Imbler v. Pachtman*, 424 U.S. 409, 421–29 (1976) (reviewing absolute prosecutorial immunity from malicious prosecution suits at common law, and holding that same immunity applies to claims brought pursuant to § 1983). The Court notes that Plaintiffs' claim is substantively the same as its first complaint, which the Court dismissed. (*See* Dkt. No. 14.) Further, Defendant McEachran's actions as a prosecutor are "intimately associated with the judicial phase of the criminal process" and therefore are accorded absolute immunity from Plaintiffs' claim. *See Imbler*, 424 U.S. at 421–29, 430. Therefore, Defendant's motion to dismiss is GRANTED as to Plaintiffs' malicious prosecution claim.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 17) is GRANTED in part and DENIED in part. Plaintiffs' claims are DISMISSED without leave to amend.

DATED this 14th day of March 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE