UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEVEN L. KAYSER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WHATCOM COUNTY, et al.,<br><br>Defendants. | CASE NO. C18-1492 RSM<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION

This 42 U.S.C. § 1983 civil rights action is before the Court on Defendants' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56. Dkt. #40. Plaintiffs contend that the case should not be dismissed. Dkt. #47. Having considered the matter, the Court grants Defendants' motion and dismisses the action.

## II.   BACKGROUND

The facts relevant to Plaintiffs' claims are straight-forward and not subject to dispute.[1] Plaintiffs Steven Kayser and Gloria Young lived in rural Whatcom County. In 2010, Mark

---

[1] The Court notes that Plaintiff has not included any pinpoint citations as required by this Court's local rules. LOCAL RULES W.D. WASH. LCR 10(e)(6). The Court finds the following statement of fact consistent with the record when viewed in the light most favorable to Plaintiffs.

ORDER – 1

Adams, a process server, went to Plaintiffs' property to serve process on Mr. Kayser. Plaintiffs were alarmed that an unknown man was on their property and approached Mr. Adams. Mr. Adams ultimately served papers upon Mr. Kayser, who then demanded that Mr. Adams leave the property. When Mr. Adams did not depart the property fast enough, Mr. Kayser retrieved a shotgun, and when Mr. Adams still did not move to leave, Mr. Kayser discharged his shotgun twice, into the air. Prompted to action, Mr. Adams moved to his car and, while inside the car, made a gesture that Mr. Kayser believed indicated that Mr. Adams possessed a gun. Mr. Kayser again fired the shotgun into the air and Mr. Adams subsequently left the property.

Following these events, the police were called, with Mr. Kayser ultimately being arrested by the Whatcom County Sheriff's Office ("WCSO") and charged with assault in the second degree while armed with a deadly weapon. The Whatcom County Prosecuting Attorney's Office ("WCPAO") pursued the charges, led at all relevant times by Defendant David S. McEachran, Whatcom County's elected Prosecuting Attorney. Nothing in the record demonstrates that Mr. McEachran was directly involved in Mr. Kayser's prosecution and the case was instead handled by a deputy prosecutor within the WCPAO. Mr. Kayser proceeded to trial and was found guilty in November, 2013. Mr. Kayser appealed his conviction and won a reversal in 2016 because the trial court had committed an evidentiary error. The case was remanded back to the state trial court for further proceedings and Whatcom County elected to retry Mr. Kayser.

Mr. Kayser's defense attorney made public records requests following remand—presumably for records related to the alleged victim Mr. Adams—to Whatcom County and several nearby jurisdictions. As a result of the public records requests, Mr. Kayser's defense attorney received records to four incidents involving Mr. Adams:

- A WCSO report detailing an alleged April 6, 2010, assault by Mr. Adams on a property owner in the course of Mr. Adams serving process. *See* Dkt. #42 at 7–19.

ORDER – 2

- A WCSO report detailing an alleged September 5, 2010, assault on Mr. Adams by a property owner who felt threatened in the course of Mr. Adams serving process and an October 15, 2010, letter from the Whatcom County Prosecuting Attorney's Office explaining its decision not to pursue charges against the property owner. *Id.* at 21–32.
- A WCSO report detailing an alleged October 3, 2015, assault on Mr. Adams by a property owner who was unhappy with his presence on her property. *Id.* at 34–37.
- An Anacortes Police Department report detailing a January 2, 2016, incident where Mr. Adams' presence on private property caused an occupant to call the police. *Id.* at 39–45.

These reports broadly demonstrated that Mr. Adams had frightened other individuals when he had entered private property to serve process. Believing that the testimony may support a claim of self-defense, Mr. Kayser's defense attorney sought to have the individuals involved testify at Mr. Kayser's second trial. The WCPAO opposed Mr. Kayser's request. When the trial court granted Mr. Kayser's request just before the second trial was to occur, on October 31, 2017, the WCPAO dismissed all charges against Mr. Kayser, with prejudice.

Several years after the dismissal of Mr. Kayser's criminal charges, Plaintiffs filed this action in the Washington State Superior Court for Whatcom County. Plaintiffs sued Whatcom County, Mr. McEachran, and the deputy prosecutor who handled Mr. Kayser's case, alleging (1) due process violations, (2) Whatcom County's liability for the constitutional violation under *Monell* and on the basis of Whatcom County's policy, custom, or failure to train, and (3) claims for malicious prosecution. Dkt. #1-1.

Defendants removed the action to this Court where it was initially assigned to the Honorable John C. Coughenour, United States District Court Judge. On Defendants' motion, Plaintiffs' complaint was dismissed with leave to amend. Dkt. #14. Plaintiffs filed an amended complaint re-alleging the same claims and Defendants again sought dismissal, which Judge

ORDER – 3

Coughenour granted.  Dkt. #15 (Plaintiffs' amended complaint); Dkt. #17 (Defendants' motion to dismiss); Dkt. #25 (Court's order granting motion to dismiss).

On appeal, the Ninth Circuit Court of Appeals affirmed the dismissal of Plaintiffs' § 1983 claims to the extent they were based on theories of Whatcom County's customs or practices and on its alleged failure to adequately train its employees.[2]  Dkt. #30.  The Ninth Circuit reversed this Court as to Plaintiffs' § 1983 due process claims against Defendant Whatcom County and Defendant David McEachran, finding that Plaintiffs had

> alleged that Whatcom County's official written policy erroneously provided that "only evidence for the possible impeachment of government employees" had to be disclosed under *Brady v. Maryland*, 373 U.S. 83 (1963), and that the County's implementation of this policy violated [Plaintiffs'] constitutional rights.  These allegations are sufficient to state a claim under [42] U.S.C. § 1983 against [Defendants Whatcom County and Mr. McEachran] for constitutional injuries inflicted by the implementation of a local government's official policies.

Dkt. #30 at 2 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

On remand, Judge Coughenour recused himself and the matter was assigned to the undersigned.  Dkt. #32.  Defendants subsequently answered Plaintiffs' amended complaint.  Dkt. #34.  Defendants now seek summary judgment in their favor and dismissal.  Dkt. #47.

### III.   DISCUSSION

**A. Legal Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Material facts are those which might affect the outcome of the suit under governing law.  *Anderson*, 477 U.S. at 248.  In ruling on summary judgment, a court does not weigh evidence to determine the truth of

---

[2] Plaintiffs appear to have abandoned their malicious prosecution claims on appeal.  *See Kayser v. Whatcom Cnty.*, No. 19-35294, Dkt. #10 (9th Cir. July 9, 2019).

ORDER – 4

the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

The non-moving party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 251. Neither will uncorroborated allegations and self-serving testimony create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987). Rather, to survive a motion for summary judgment, the non-moving party must make a "sufficient showing on [each] essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

On summary judgment, the Court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). However, where the non-moving party fails to properly support an assertion of fact or fails to properly address the moving party's assertions of fact, the Court will accept the fact as undisputed. FED. R. CIV. P. 56(e). As such, the Court relies "on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1278–79 (9th Cir. 1996) (quotation marks and citations omitted). The Court need not "comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001); *Keenan*, 91 F.3d at 1279 (the court will not "scour the record in search of a genuine issue of triable fact").

ORDER – 5

B. **Plaintiffs' § 1983 Claims**

A § 1983 claim exists where defendants, acting under the color of state law deprived plaintiffs of rights secured by the Constitution or federal statutes. *See Pistor v. Garcia*, 791 F.3d 1104, 1114 (9th Cir. 2015). Here, Plaintiffs pursue claims against Whatcom County and Mr. McEachran, in his official capacity as Whatcom County's elected Prosecuting Attorney. Both are persons against whom § 1983 claims may be brought. *See Jackson v. Barnes*, 749 F.3d 755, 764 (9th Cir. 2014); *Monell*, 436 U.S. at 690 n.55. The parties make no distinction between the claims and indeed there is no difference between a claim against Whatcom County and a claim against Mr. McEachran in his official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citing *Monell*, 436 U.S. at 690 n.55).

Local governments "may not be held liable for a § 1983 violation under a theory of respondeat superior for the actions of its subordinates." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016). Rather, the claim must rest on an affirmative action taken by the local government. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997) ("In any § 1983 suit . . . the plaintiff must establish the state of mind required to prove the underlying violation. Accordingly, proof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably."). That is, "a plaintiff must show that a 'policy or custom' led to the plaintiff's injury" and that "the policy or custom of a municipality 'reflects deliberate indifference to the constitutional rights of its inhabitants.'" *Id.* (citing *Monell*, 436 U.S. at 694; *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)). This is often accomplished by

ORDER – 6

(1) pointing to an express policy,[3] (2) establishing a custom or practice that is akin to a policy,[4] or (3) establishing that the entity's inaction is akin to affirmative adoption of a policy.[5] *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.  These are 'action[s] for which the municipality is actually responsible.'") (internal citations omitted, alteration in original).

Here, and of primary importance, the Court notes that the Ninth Circuit affirmed the Court's earlier dismissal of Plaintiffs' claims to the extent they were premised on Defendants' customs or practices or on a failure of Defendants to train their employees (a policy of inaction).

### 1. The Court Will Assume That Mr. Kayser's Constitutional Rights Were Violated

Plaintiffs maintain that Defendants violated Mr. Kayser's constitutional rights by failing to disclose exculpatory evidence in violation of their obligations under *Brady* and its progeny. *See Brady v. Maryland*, 373 U.S. 83, 88 (1963) (setting forth a violation of the constitutional right to due process).  Plaintiffs further argue that this Court and the Ninth Circuit have already impliedly found that Defendants' actions violated *Brady* principles.  Dkt. #47 at 9–13. Defendants appropriately object, noting that the prior orders were formulated under the more forgiving pleading standards by which motions to dismiss are judged.  Dkt. #48 at 2.  Further discussion on this point is not necessary.

As set out in the Court's second order dismissing Plaintiffs' complaint, a plaintiff alleging a *Brady* violation must prove that: "The evidence at issue [is] favorable to the accused, either

---

[3] *E.g. Monell*, 436 U.S. 658 (1978).

[4] *E.g. City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988).

[5] *E.g. Connick v. Thompson*, 563 U.S. 51 (2011).

ORDER – 7

because it is exculpatory, or because it is impeaching; that evidence [was] suppressed by the State, either willfully or inadvertently; and [that] prejudice . . . ensued." Dkt. #25 at 3 (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)) (alterations by this Court).

The Court will not dwell on the issue. Plaintiffs' hurdle is not an insignificant one. *See Smith v. Almada*, 640 F.3d 931, 939 (9th Cir. 2011) ("strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict") (quotation marks and citations omitted). But at the end of the day, Mr. Kayser proceeded to his first trial without the benefit of the evidence at issue, the evidence did tend to support Mr. Kayser's defense, and the charges were dismissed with prejudice when the evidence was ruled admissible. For the sake of this motion, and because Plaintiffs' claims fail for other reasons, the Court accepts Plaintiffs' argument and finds that there is at least a genuine dispute as to material facts with regard to whether a *Brady* violation occurred.

**2. Any *Brady* Violation Was Not Caused by a County Policy**

Plaintiffs must next establish that the constitutional violation resulted from Defendants' policy and that the policy reflected deliberate indifference to constitutional rights. *See Connick*, 563 U.S. at 60 (plaintiffs must prove that an "action pursuant to official municipal policy" caused their injury). Again, the Ninth Circuit held that dismissal was inappropriate specifically because Plaintiffs "alleged that Whatcom County's official written policy erroneously provided that 'only evidence for the possible impeachment of government employees' had to be disclosed under [*Brady*, 373 U.S. 83]." Dkt. #30 at 2. But Plaintiffs do not present evidence of a specific policy that led to the constitutional violation upon which they base their claims.

Mr. Kayser was charged in 2010, and his jury trial took place on November 18–21, 2013, resulting in his conviction. Dkt. #44 at 55–62. At the relevant times, WCSO had not formally

ORDER – 8

adopted a policy related to *Brady* obligations and did not adopt a formal policy until September 16, 2014. Dkt. #41 at 5–9. As for WCPAO, Mr. McEachran testifies that the office "operated under the model policy promulgated by the Washington Association of Prosecuting Attorneys [("WAPA")]." Dkt. #43 at ¶ 3. The office adopted a formal policy no earlier than June 19, 2013. *Id.* at 6–12. Plaintiffs do not present evidence that any formal policy existed before that date.

As to the WCPAO policy, Plaintiffs are unable to point to a specific portion of the policy that led to the constitutional violation on which they base their claims. In fact, Plaintiffs do not point to any limiting language within the policy and do not argue, let alone establish, that anything within the policy limits a prosecutor's obligations under *Brady*. On the Court's review, the policy appears consistent with *Brady* principles.

In fact, the purpose of the policy appears to the Court to be more limited in scope: "This written policy is designed to achieve compliance with [requirements related to the disclosure of potential impeachment evidence for recurring investigative or professional witnesses], and to foster county-wide uniformity in the way potential impeachment of recurring government witness issues are resolved." *Id.* at 7. The policy's background section further notes that prosecutors have an "affirmative duty to disclose potentially exculpatory information to a charged defendant." *Id.* at 8. Similarly, the policy makes clear that "[p]rosecutors have 'a duty to learn of any [exculpatory] information known to the others acting on the government's behalf in the case, including the police.'" *Id.* (quoting *Kyles v. Whitely*, 514 U.S. 419 (1995)). Similarly, the policy specifies that *Brady* goes beyond impeachment evidence and that prosecutors have "an affirmative duty to seek out certain impeachment information and a duty to disclose information that may not impact the witnesses [sic] credibility." *Id.* at 9. Having set forth the background within which the policy exists, it then sets forth guidelines and processes on how WCPAO planned to deal with a more limited subset of *Brady* material—disclosures related recurring

ORDER – 9

government witnesses. Again, the Court finds no language that limits a prosecutor's obligations under *Brady*, and Plaintiffs do not point to any. That the policy specifically addressed a smaller galaxy within the *Brady* universe does not imply that prosecutors were free to destroy all other galaxies in the *Brady* universe.

Plaintiffs argue that "[t]he policy at issue is Defendants' definition of *Brady* evidence that must be disclosed to the defendant in a criminal prosecution." Dkt. #47 at 13. Further, Plaintiffs assert that "Defendants' post-2014[6] policies do not simply fail to ensure that all *Brady* evidence is disclosed to criminal defendants; they actively direct government employees to disclose *only* potential impeachment information of government employees. Defendants' post-2014 policies are thus appropriately characterized as policies of action." *Id.* at 14. Notably absent is any citation to the language upon which Plaintiffs' assertion is based.

Plaintiffs' unsupported arguments reveal that Plaintiffs are attempting to reargue claims that have already been dismissed—claims premised on Defendants' alleged failures to adequately train prosecutors on their *Brady* obligations. Plaintiffs do not take issue with any material in the WCPAO's policy or support the manner in which it led to the alleged violation of Mr. Kayser's constitutional rights. Plaintiffs simply complain that additional requirements could have been set forth more explicitly in this, or another, policy.[7] Even if these claims had not already been dismissed, Plaintiffs do not point to any past pattern of conduct that could support a claim of

---

[6] The Court believes Plaintiffs likely intended to refer to "post-*2013* policies." The WCSO adopted relevant policies in 2014, but this was after Mr. Kayser was convicted in possible violation of his due process rights. In the normal course, a policy enacted after a violation cannot serve as a local government's policy that led to the constitutional violation. The Court believes that Plaintiffs likely meant to refer to the WCPAO's policy, which was adopted in 2013. Dkt. #43 at 6–12.

[7] "[A] plaintiff must show that the [local government's] action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the [local government's] action and the deprivation of federal rights." *Brown*, 520 U.S. at 404.

ORDER – 10

inaction. *See Brown*, 520 U.S. at 407–08 (noting that "continued adherence to an approach that [policymakers] know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger" the liability of local governments); *Brown v. Lynch*, 831 F.3d 1146, 1152 (9th Cir. 2016) (noting that failure to train claims need "evidence that policymakers were aware or should have been aware of the serious risks posed by their failure to act"). Plaintiffs do not present any evidence that other similar constitutional violations had occurred.

Plaintiffs' argument that "[t]he policies of both offices, limiting *Brady* evidence to potential impeachment of reoccurring/government witnesses, is patently unconstitutional," does not fare any better. *See* Dkt. #47 at 16. Plaintiffs point to nothing that establishes a constitutional violation premised on a local government's failure to have a policy that exhausts all of the myriad situations in which *Brady* may be implicated. Plaintiffs do not point to an authority that even requires a form policy related to *Brady* material. Surprisingly, Plaintiffs argue the opposite point as well; that all of Defendants' employees "demonstrated a basic understanding that *Brady* requires them to disclose all exculpatory evidence to criminal defendants." Dkt. #47 at 18; *see also Connick*, 563 U.S. at 64–67 (noting that the extensive legal training of prosecutors and their tendency to work collectively cuts against a theory of municipal liability founded on a single foreseeable violation of Brady).[8] Plaintiffs appear wholly unaware that this allegation alone cuts sharply against their argument that the Defendants acted "with 'deliberate indifference' as to [the] known or obvious consequences" of failing to adequately train their prosecutors. *See Brown*, 520 U.S. at 407 (1997).

---

[8] Surprisingly, neither party even cites to *Connick*, the leading Supreme Court case considering municipal liability for prosecutor's later-discovered *Brady* violation.

ORDER – 11

Plaintiffs seek to impose liability upon Defendants for the singular act of an employee, which in this circumstance allegedly violated Plaintiffs' constitutional rights—*i.e.* respondeat superior. This runs counter to decades of precedent and fails as a matter of law. *See Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713–14 (9th Cir. 2010) (summary judgment appropriate where plaintiff "points us to no express county policy or custom, and he provides no evidence showing even an inference that such a procedure exists").

### IV.   CONCLUSION

Accordingly, and having considered Defendants' motion, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Defendants' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56. (Dkt. #40) is GRANTED. Plaintiffs' Motions in Limine (Dkt. #49) are DENIED as moot. Plaintiffs' claims are DISMISSED with prejudice. This case is CLOSED.

DATED this 24th day of September, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE